FILED

2010 Sep-24  PM 12:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| POLLY McANALLY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No.  2:08-cv-00935-HGD |
| | ) | |
| CANADA LIFE INSURANCE | ) | |
| COMPANY OF AMERICA, et al., | ) | |
| | ) | |
| Defendants | ) | |

## **MEMORANDUM OPINION**

The above-entitled civil action is before the court on the Motion to Dismiss, or Alternatively for Summary Judgment, filed by defendant John Hancock Variable Life Insurance Company.[1]  (Doc. #3).  Defendant Canada Life Insurance Company of America has joined in the motion.  Because the motion was accompanied by evidence which will be considered and not excluded, the motion has been construed by the court to be a motion for summary judgment.  *See* Rule 12(d), Fed.R.Civ.P. Also for consideration are the Motion for Sanctions filed by Canada Life Insurance

---

[1] This defendant is identified in the complaint as John Hancock Insurance Company.  It asserts its correct name is John Hancock Variable Life Insurance Company.

Company (Doc. #12), and the Motion for Sanctions filed by John Hancock Variable Life Insurance Company (Doc. #13).

## SUMMARY JUDGMENT STANDARD

This matter is considered by the court pursuant to the provisions of Rule 56, Fed.R.Civ.P.   Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).  Thus, summary judgment is appropriate where the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  The substantive law governing the action determines whether an element is essential. *Liberty Lobby*,  477 U.S. at 248, 106 S.Ct. at 2510.  A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323, 106 S.Ct. at

2553; *see Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also, Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his or her favor. *Id.* at 255, 106 S.Ct. at 2514, *citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970). However, "[a] court need not permit a case to go to a jury when the inferences that are drawn from the evidence and upon which the non-movant relies are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 592, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). It is, therefore, under this standard that the court must determine whether the plaintiff can meet her burden of

coming forward with sufficient evidence as to each material element of her claim sufficient to permit a reasonable jury to find in her favor.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Polly McAnally, commenced this action by filing a complaint in the Circuit Court of Blount County on April 18, 2008.  She asserts a cause of action against defendants, Canada Life Insurance Company of America (Canada Life) and John Hancock Insurance Company (John Hancock), for breach of contract.  The action was removed by defendants to federal court on May 29, 2008.

Plaintiff alleges in her complaint that she was married to T. A. Tribble on July 12, 1999, in Decatur, Alabama.  Tribble died on April 21, 2002.  Plaintiff alleges that Tribble had life insurance policies with both defendants, naming her as beneficiary.  She avers that Canada Life and John Hancock have refused to pay insurance proceeds to plaintiff after Tribble's death.  (Doc. #1-2, Complaint).

On March 2, 1992, T. A. Tribble applied for a $100,000 life insurance policy with John Hancock.  John Hancock issued Policy No. UL 00 228 798 on the life of T. A. Tribble on April 8, 1992.  (JH[2] Ex. 1, Flaherty Affid. at 2 and Ex. A).  Tribble

---

[2] Exhibits submitted by John Hancock Variable Life Insurance Company are designated as "JH" and exhibits submitted by Canada Life Insurance Company of America are designated as "CL."

designated the Gulf States Conference of Seventh Day Adventist Church as beneficiary. (*Id.*). The policy provided in part:

> We will pay the Surrender Value of the policy on receipt of written notice and the policy before the Insured's death and before the Maturity Date. On such receipt, the policy will terminate without further value.

(JH Ex. 1, Flaherty Affid. at Ex. A, at ¶ 9).

Tribble also had a life insurance policy with Canada Life, Policy No. 2624994. It was issued on April 12, 1993, with a yearly premium of $9,000.04 and a face amount of $91,197.00. (Doc. #7, CL Ex. A, Canada Life Policy). Tribble designated Cecilia Summes (niece), Thomas A. Clemons (nephew), Robert Ray Clemons (nephew), and Henry D. Brown, III (nephew) as beneficiaries. (Doc. #7, CL Ex. A, Application for Insurance). That policy contained the following provisions:

> If this policy has lapsed or if it is being kept in force as paid-up or extended insurance, you may reinstate it at any time within three years after the first unpaid premium was due. However, you may not reinstate the policy if you have surrendered it for its cash surrender value.
>
> * * * * * *
>
> At any time, you may surrender this policy for its cash surrender value. . . . The cash surrender value will be the cash value increased by any cash accumulations which are on deposit and the cash value of any paid-up addition dividends. . . . Normally, we will make the payment of the cash surrender value within a few days of your request.

(Doc. #7, CL Ex A., Canada Life Policy, at 6, 11).

Plaintiff befriended Tribble in approximately 1993, and Tribble moved into plaintiff's residence at 820 Mountain Gap Road, Huntsville, Alabama, at some time thereafter.   In the Spring of 1996, plaintiff first began trying to cash surrender Tribble's life insurance policies.  She sent letters to Canada Life and John Hancock asking for the policies to be cashed out but was not successful in these attempts to cash out the policies.

On June 5, 1996, Ray Clemons, Tribble's nephew, was appointed by the Probate Court of Madison County to be Conservator over Tribble's assets, including the John Hancock and Canada Life insurance policies.[3]  (JH Ex. 2, Conservatorship Appointment).   John Hancock and Canada Life were notified by Clemons of the conservatorship in 1996.

On June 7, 1999, plaintiff filed a Petition for Letters of Guardianship pursuant to the Alabama Uniform Guardianship and Protective Proceedings Act, seeking to be appointed T. A. Tribble's legal guardian.  (JH Ex. 3).   At the time she filed this petition, plaintiff was aware of the prior conservatorship and admitted Tribble was incapacitated.  The petition was set to be heard in the Madison County Probate Court on July 13, 1999.

---

[3] The Letters of Conservatorship granted by the Probate Court on June 11, 1996, provide that Tribble "shall have full authority for his day to day activities" and further provide that Tribble would have full authority over a checking account.  *See* Doc. #6, Plaintiff's Response to Motion for Summary Judgment, Exhibit to McAnally Affidavit.

On July 6, 1999, Ray Clemons, as Conservator for T. A. Tribble, filed a civil action in the Circuit Court of Madison County against plaintiff for fraud, deceit and conversion, alleging plaintiff engaged in wrongful conduct with regard to T. A. Tribble's assets. The suit also named Regions Bank and alleged it acted negligently in allowing McAnally to obtain the proceeds of a matured bond, which she deposited into Tribble's account and then withdrew. (JH Ex. 4, *Ray Clemons individually and as Conservator of the Estate of T. A. Tribble vs. Polly McAnally, et al.*, Civil Action No. CV 99-1315 JLB). That same day, plaintiff filed a motion to dismiss her Petition for Letters of Guardianship, which motion was granted. (JH Ex. 5). Plaintiff was served with a copy of the complaint in CV 99-1315 JLB on July 9, 1999.

On July 12, 1999, plaintiff and Tribble were married in the Probate Court of Morgan County, Alabama. Plaintiff and Tribble were both residents of Madison County at the time of this marriage. Clemons, as Conservator of Tribble's estate, filed an amended complaint in CV 99 1315 JLB, seeking to annul the marriage.

On July 19, 1999, both plaintiff and Tribble executed a Change of Beneficiary form seeking to change the beneficiary on the John Hancock policy to Polly McAnally as an "irrevocable beneficiary." (JH Ex. 6, John Hancock Change of Beneficiary Form). At the same time, they attempted to change the beneficiary on the Canada Life insurance policy to McAnally. (JH Ex. 10, McAnally Depo. of September 2001, at 159-63).

On August 16, 1999, plaintiff and Tribble signed and submitted a Cash Surrender request to John Hancock on Policy No. UL 000 228 798.  (JH Ex. 1, Flaherty Affid., at ¶ 3).  The Cash Surrender Request Form contained the following:

> I would like to surrender this contract for its cash value, and to pay the full cash value of this policy according to the instructions in Sections B and C.  I understand that this transaction ends John Hancock's liability under this policy except the amount of the cash surrender value, as specified in the policy contract. . . .

(*Id.* at ¶ 3 and Ex. B).

The cash value of the policy at the time of this request was $75,580.41.  John Hancock processed the Cash Surrender request and sent Tribble a check in the amount of $72,627.62 ($2,952.79 was withheld for federal income tax) on August 24, 1999.  (*Id.* at ¶ 4).  Tribble endorsed the check and on August 27, 1999, plaintiff endorsed the cash surrender check and deposited it into her savings account with SouthTrust Bank.  (JH Ex. 7).  This account is held in the names of Polly McAnally, Bobby McAnally, Billy McAnally or Brandi Nation.  Bobby McAnally and Billy McAnally are Polly McAnally's sons, and Brandi Nation is Polly McAnally's granddaughter.  (JH Ex. 10, McAnally Depo. of September 2001, at 97-100).  Plaintiff and Tribble also obtained a check for the cash surrender value of the Canada Life policy, in the amount of $71,841.44 and deposited it into the SouthTrust savings account on September 14, 1999.  (*Id.*).

On September 14, 1999, plaintiff withdrew $10,000 and on September 16, 1999, she withdrew an additional $35,000 from the savings account. One day later, on September 17, 1999, plaintiff provided Bobby McAnally with a check in the amount of $45,000 as a loan. On this same date, Bobby McAnally, who owned the residence at 820 Mountain Gap Road in fee simple, deeded to plaintiff and Tribble a life estate in this property. Plaintiff also withdrew $96,000 and purchased a cashiers check which she used to satisfy a $96,000 mortgage (solely in Bobby McAnally's name) on the residence at 820 Mountain Gap Road. (JH Ex. 10, McAnally Depo. of September 2001, at 102-09).

Clemons, as Conservator, filed a Third Amended Complaint in CV 99-1315 JLB, alleging that John Hancock breached its contract and/or was negligent in sending the cash surrender value of Policy No. UL 000228798 directly to T. A. Tribble and Polly McAnally. Specifically, Clemons contended that only he as Conservator was entitled to request and receive the cash surrender value of the John Hancock policy. (JH Ex. 8, Glick Affid., at ¶ 1 and Ex. A). Further, Clemons alleged that John Hancock's breach of contract and/or negligence allowed Polly McAnally to convert the cash surrender proceeds of Policy No. UL 000228798 to her own use. (*Id.*).

Clemons also alleged in the Third Amended Complaint that Canada Life breached its contract and converted funds belonging to the conservatorship by

allowing McAnally to obtain the cash surrender value of $71,841.44 on or about September 3, 1999, despite being notified of the establishment of the conservatorship by letter dated June 13, 1996. It was further alleged that Canada Life breached its contract and committed conversion when it paid Tribble $29,551.51 on January 20, 2000, representing funds available to policyholders as a result of Canada Life's stock redemption plan, thereby allowing McAnally to misappropriate the funds. (JH Ex. 8, Glick Affid., at Ex. A).

John Hancock filed a cross-claim against Polly McAnally seeking a judgment against her for the conversion and misuse of the cash surrender proceeds of Policy No. UL 000228798, should Clemons prevail on the claims alleged against John Hancock in the Third Amended Complaint in CV 99-1315 JLB. (*Id.* at ¶2 and Ex. B). Canada Life also filed a similar cross-claim.

Plaintiff was deposed twice in connection with the state court litigation. On April 19, 2000, she testified that she and Tribble cash surrendered the John Hancock policy and received the proceeds. (JH Ex. 9, McAnally Depo. of April 2000, at 112-13). On September 6, 2001, plaintiff was deposed by John Hancock and Canada Life relative to the cash surrender of the subject insurance policies. During that deposition, plaintiff testified:

> Q. The first page, does it show the John Hancock cash surrender check, front and back?

A.  Yes.

Q.   Did Mr. Tribble sign his signature to the check, an endorsement?

A.  You see it right there.

Q.  I see the name Thelma A. Tribble written on there?

A.  That's his name.

Q.  And he wrote that himself?

A.  Yes.

Q.  You didn't write it for him?

A.  No.

Q.  And then you wrote Polly McAnally under that?

A.  Right.

Q.   This check was for seventy–two thousand six hundred and twenty–seven dollars and sixty–two cents; correct?

A.  Yes.

Q.   And you put that check into your savings deposit account with SouthTrust Bank, didn't you?

A.  Yes.

Q.   And it was deposited into your SouthTrust savings account on August 27th, 1999?

A.  Yes.

Q.  Is Exhibit Nine the Canada Life cash surrender check for seventy-one thousand eight hundred and forty-one dollars and forty-four cents?

A.  Yes.

Q.  And did Mr. Tribble himself endorse the check on the back?

A.  Yes.

Q.  All right.  And then under that did you write, pay to the order of Polly McAnally, and endorse it to yourself?

A.  Well, I signed under his name.

Q.  Let me see that.

A.  Which I didn't have to, I don't think.

Q.  You wrote Polly McAnally Tribble?

A.  Um-hum.

Q.  That's your handwriting?

A.  Um-hum.

Q.  You have to answer out.  You have to say yes.

A.  Yes.

Q.  And did you write in there, pay to the order of Polly McAnally Tribble in that printed handwriting above your signature?

A.  No, I didn't write that.  The bank wrote that.

Q.  That Canada Life check was also deposited into your SouthTrust savings account bank, wasn't it?

A.  Yes.

Q.  And Exhibit Ten is a correct copy of the deposit slip for that check into your savings account?

A.  Yes.

(JH Ex. 10, McAnally Depo. of September 2001, at 97-100).  She further testified:

Q.  Okay. Do you recall cash surrendering the John Hancock policy?

A.  Do I what?

Q.  Do you recall that the John Hancock policy was cash surrendered?

A.  That we received a check for it?

Q.  Yeah. You took all the money out of it; correct?

A.  Yes.

Q.  And you understood that – let me back up a little bit. When did you and T. A. first discuss cash surrendering the John Hancock policy?

A.  I guess it was about three months before he did it.

Q.  About three months beforehand? And had y'all decided at that time to cash surrender both the John Hancock and the Canada Life policies on Mr. Tribble's life?

A.  Yes.

Q.   And you understood that in cash surrendering the policies that the life insurance would no longer be in force; correct?

A.  Yes.

Q.   Did y'all make a decision that you'd rather have the cash that was in those policies today as opposed to any death benefits that might be payable in the event of Mr. Tribble's death?

A.  His funeral – we paid for it already.

(*Id.* at 164-65).

Thereafter, Clemons, both individually and as Conservator of T. A. Tribble's Estate, and T. A. Tribble entered into a Mutual Release and Settlement Agreement with John Hancock and Canada Life.[4]  (JH Ex. 8, Glick Affid., at Ex. J).  Pursuant to the Mutual Release and Settlement Agreement, John Hancock and Canada Life paid $90,000 to Clemons as Conservator of the Estate of T. A. Tribble.  The Mutual Release and Settlement Agreement provided in part, as to consideration for the payment:

> Policy # 002624994 issued by Canada Life and Policy #UL 000228798 issued by John Hancock on the life of Thelma A. Tribble are not in force or effect nor have any

---

[4]  The release was signed by Clemons and Tribble on November 12, 2001.  It was signed by John Hancock on December 4, 2001.  It is unclear on what date Canada Life signed the release. According to the terms of the agreement, it became effective "immediately following the execution by Parties conditioned solely upon payment of the settlement sum."  (JH Ex. 8, Glick, Affid, at Ex. J, ¶ 10).

value, and CLEMONS and TRIBBLE warrant that these
policies are void *ab initio* and canceled . . .

(JH Ex. 8, Glick Affid., at ¶7 and Ex. J).

The cross-claims of Clemons as Conservator and John Hancock and Canada
Life against McAnally were set for trial on October 15, 2001.  Prior to this trial date,
a settlement agreement was reached between the parties as to these claims.   On
October 15, 2001, the parties appeared for trial and stipulated to the agreed upon
judgment and settlement agreement.  (JH Ex. 8, Glick Affid., at ¶ 3 and Exs. C and
K).  Benjamin L. Boyanton, counsel for McAnally in the state court litigation, advised
the trial court that the case was settled as to all parties.  (JH Ex. 8, Glick Affid., at
¶ 3).  Boyanton stated to the court that he had explained the settlement terms to
McAnally and obtained her agreement to those terms, after which he contacted
counsel for the other parties and the court and advised that the case was settled.
However, he also indicated to the court that McAnally was having second thoughts
about her agreement, but she never had withdrawn her agreement.  (JH Ex. 8, Glick
Affid., at Ex. C).

Before a judgment and/or an order was entered by the trial court to incorporate
the parties' settlement agreement, plaintiff attempted to renege on her agreement to
settle.  On October 18, 2001, Mr. Boyanton sent a letter to her advising her that he
had advised the other parties and the court of the settlement.  (JH Ex. 8, Glick Affid.,

at ¶4).  Clemons filed a Motion to Enforce the Settlement Agreement, which motion was joined in by John Hancock.  (JH Ex. 8, Glick Affid., at Exs. E and F).  The trial court granted the motion on October 24, 2001.  (*Id.* at Ex. G).  On November 9, 2001, McAnally filed a Motion to Set Aside the Judgment.  (*Id.* at Ex. H).  This motion was denied by the trial court on November 13, 2001.  (*Id.* at Ex. I).

On August 23, 2002, a final judgment was entered in accordance with the settlement agreement reached among the parties and the stipulation by all parties in open court on October 15, 2001.  A copy of the transcript in which the terms of the settlement were read into the record was attached to the final judgment and incorporated by reference.  The judgment stated it was effective October 15, 2001. (*Id.* at Ex. K).  Specifically, Clemons, as Conservator, John Hancock and Canada Life were awarded a judgment against McAnally for $194,424.57, with the provision that the judgment would not be dischargeable in bankruptcy.  McAnally was required to secure a conveyance for the interest of her two sons in the Mountain Gap residence to the conservatorship, with McAnally retaining a life estate.  Clemons agreed to dismiss the claim for annulment of the marriage in return for McAnally's relinquishment of any rights in Tribble's property as a surviving spouse or under any will.

McAnally did not appeal the final judgment.  Instead, on April 24, 2003, she filed a Motion for Relief pursuant to Rule 60(b)(4)(c), Ala.R.Civ.P., seeking relief

from the August 23, 2002, judgment.  (*Id.* at Ex. L).  The trial court denied this motion on April 28, 2003.  Plaintiff did not appeal the order denying her Rule 60(b) motion.  (JH Ex. 8, Glick Affid., at ¶ 9).

In the Spring of 2004, plaintiff made a claim for death benefits under the John Hancock Policy No. UL 000228798.  She sent a handwritten letter dated April 2, 2004, attaching a Certificate of Marriage between Thelma Augusta Tribble and Ponnell Polly McAnally, dated July 12, 1999, and a Death Certificate for Thelma Augusta Tribble, with a date of death of April 21, 2002.  (JH Ex. 1, Flaherty Affid, at ¶ 4 and Ex. D).  She took this action despite having previously cash surrendered the policy in August 1999 and acknowledging in her September 2001 deposition that no death benefits would be payable under the surrendered policy.

On May 11, 2004 John Hancock sent a letter advising plaintiff that Policy No. UL 000228798 was terminated before T. A. Tribble died and was no longer in force and no benefits were available thereunder.  (*Id.* at ¶¶ 5-6 and Ex. E).  The instant litigation for breach of the insurance proceeds was commenced  on April 18, 2008.

**The Motion for Summary Judgment**

As grounds for the motion for summary judgment, defendants assert:  (1) the life insurance policies made the subject of this litigation were no longer in force at the time of T. A. Tribble's death, due to the cash surrender and the state court settlement,

so no death benefit is payable; (2) plaintiff's claim for breach of contract or specific performance is barred by *res judicata* and/or collateral estoppel; (3) plaintiff's claims are barred by the doctrines of release and judicial estoppel; and (4) plaintiff lacks standing to assert a claim for benefits because she was not the beneficiary of the policies due to Tribble's legal incapacity in 1999 to change the beneficiary.

In response, plaintiff asserts that defendants have taken a position inconsistent with their position in the state court case. She contends that if, as defendants assert, T. A. Tribble was incompetent at the time he cashed out the insurance policies, the cash surrender request was void *ab initio* and therefore the policies are still in effect. She also argues that Tribble had a right to make her the policy beneficiary, without the conservator's approval, because he retained authority for his "day to day activities" after the conservatorship was established. Plaintiff challenges the validity of the release and agreement entered into by Clemons, Tribble, John Hancock and Canada Life, asserting it is deficient on its face because it is not dated and that a jury question exists as to Tribble's competency when he signed the agreement.

**The Motion to Amend**

In her opposition to the motion for summary judgment, plaintiff seeks to amend her complaint to add a claim that the settlement and judgment in the state court action were obtained by fraud and are therefore due to be set aside and rendered void. She

avers that she was not present in court on October 15, 2001, and that John Hancock and Canada Life colluded with her attorney, Ben Boyanton, to obtain the judgment. She asserts that making the judgment non-dischargeable in bankruptcy is contrary to bankruptcy law.[5]   McAnally further alleges that Clemons exercised duress or undue influence over Tribble to make him sign the release and agreement.

The motion to amend is due to be denied because it is futile and frivolous.  *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004); *Laborers Local 938 Joint Health and Welfare Trust v. B. R. Starnes Co.*, 827 F.2d 1454, 1456 (11th Cir. 1987) (court is not obligated to allow amendment if to do so would be futile).

The Full Faith and Credit Clause, U.S. Const., Art. IV, implemented by 28 U.S.C. § 1738,[6] requires that federal courts afford the same full faith and credit to state court judgments that would be given by other courts of that state.  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 1243, 84 L.Ed.2d 158 (1985).

---

[5] The court notes that 11 U.S.C. § 523 provides certain exceptions to discharge for judgments based on fraud.  Therefore, the non-dischargeability of the judgment, based on claims against McAnally for fraud and conversion, is not contrary to bankruptcy law.

[6] Title 28 U.S.C. § 1738 provides in relevant part:

> The records and judicial proceedings of any court of any ... State, Territory or Possession, . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

Further, the *Rooker-Feldman* doctrine[7] holds that a federal district court lacks jurisdiction to review a state court's final judgment.  *Amos v. Glynn County Bd. of Tax Assessors*, 347 F.3d 1249, 1265-66 n.11 (11th Cir. 2003).  Four criteria must be met for the doctrine to apply:  (1) the party in federal court is the same as in the state court; (2) the state court ruling was a final judgment on the merits; (3) the plaintiff in federal court had a reasonable opportunity to raise her claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or inextricably intertwined with its judgment.  *Id.*  The doctrine is confined to cases that are "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 1521-22, 161 L.Ed.2d 454 (2005).

In this case, McAnally is the same party in federal court as in the state court; the state court ruling is a final judgment on the merits; McAnally had a reasonable opportunity to raise her claims in the state court proceeding; and the issue McAnally attempts to raise in the proposed amended complaint in this case was adjudicated by

---

[7] The doctrine comes from the cases of *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-416, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

the state court or inextricably intertwined with its judgment.  Therefore, any challenge to the state court judgment by McAnally is barred and the proposed amended complaint is futile.


DISCUSSION

**Insurance Policies No Longer In Effect**

The insurance policies at issue were canceled when they were surrendered for cash value.  The John Hancock policy specifically provides that upon the insured's receipt of the cash surrender value of the policy, "the policy will terminate without further value."  The Canada Life policy similarly provides that an insured "may not reinstate the policy if you have surrendered it for its cash surrender value."  In addition, in the Mutual Release and Settlement Agreement signed by Clemons and Tribble in connection with the state court action, they both acknowledged that the John Hancock and Canada Life policies were not in force or effect nor had any value, and warranted that the policies are "void *ab initio* and canceled."  Therefore, it is clear that the policies at issue ceased to exist and were no longer in force, and no further benefits were available under them once they were surrendered for cash value by Tribble.  The proceeds of the policies were received once by Tribble and therefore cannot be received again by McAnally.

Further, plaintiff's own testimony establishes that she intended to cash surrender the John Hancock and Canada Life policies, that she and Tribble executed the forms to cash surrender the policies, that she understood there would be no death benefits payable upon Tribble's death, and that she received the cash surrender proceeds of the John Hancock and Canada Life policies and placed them in her savings account. Her attempt to sue for the proceeds is completely unsupported by any legal or factual basis.

Plaintiff has urged the court to find that since Tribble was subject to a conservatorship, he was incompetent to cash out the policies and the policies are still in effect. No matter what his competency at the time the cash surrender requests were made, the fact remains that he succeeded in receiving the cash surrender value of both policies and, by their terms, the policies then were terminated. Further, Clemons, as the lawfully appointed conservator for Tribble, signed the Mutual Release and Settlement Agreement acknowledging that the policies were void.

Plaintiff's second argument, that Tribble had a right to change the beneficiary on his life insurance policies to her, has no bearing on the court's conclusion. Whether or not McAnally was the beneficiary of the life insurance policies, they were cashed out prior to Tribble's death. Therefore, the policies were terminated and no proceeds were due and payable upon Tribble's death, no matter who was the beneficiary.

Plaintiff's third argument against summary judgment is that the release is deficient on its face because the blanks for the dates on pages 1 and 7 are not filled in. She also argues that Tribble signed the release on November 12, 2001; therefore, a jury must decide if he was competent to sign the release. As noted in footnote 4, the release became effective "immediately following the execution by Parties conditioned solely upon payment of the settlement sum." Therefore, the fact that the date blanks in the release are not filled in does not render the release deficient and unenforceable. In addition, Clemons, individually and as conservator for Tribble, signed the release. Thus, even if Tribble was not competent to sign the release, his lawfully appointed conservator did sign the release on his behalf.

### *Res Judicata*/Collateral Estoppel

John Hancock and Canada Life assert that the final judgment of the Madison County Circuit Court, entered August 23, 2002, and effective October 15, 2001, precludes McAnally's claims. They invoke the doctrines of *res judicata* and collateral estoppel.

Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). *Res judicata* makes a final, valid judgment conclusive on the

parties, and those in privy with them, as to all matters, fact and law, that were or should have been adjudicated in the proceeding. *First Alabama Bank of Montgomery, N.A. v. Parsons Steel, Inc.*, 747 F.2d 1367 (11th Cir. 1984); *Ultracashmere House, Ltd. v. Meyer*, 664 F.2d 1176 (11th Cir. 1981). Under Alabama law, "[t]he elements of *res judicata*, or claim preclusion, are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits." *Dairyland Ins. Co. v. Jackson*, 566 So.2d 723, 725 (Ala. 1990). "'If those four elements are present, then any claim that was, or that could have been, adjudicated in the prior action is barred from further litigation.'" *Chapman Nursing Home, Inc. v. McDonald*, 985 So.2d 914, 919 (Ala. 2007) (quoting *Equity Res. Mgmt., Inc. v. Vinson*, 723 So.2d 634, 636 (Ala. 1998)).

Collateral estoppel or issue preclusion means that "preclusive effect will be given to the adjudication of an issue litigated in a prior proceeding if the issue in the subsequent proceeding is identical to the one involved in the prior action, the issue was actually litigated, and the determination of the issue was necessary in the prior action." *Williams v. Bennett*, 689 F.2d 1370, 1381 (11th Cir. 1982).

In this case, the judgment in the state court case was a judgment on the merits, and the Madison County Circuit Court is a court of competent jurisdiction. The parties in this litigation (McAnally, John Hancock and Canada Life) are the same as

in the state court case.  The same issues, about the validity of the insurance policies and the termination of those policies after surrender of the cash value, were present in both the state court case and the instant action.  The resolution of those claims was central to the state court action and is also crucial here.  Therefore, *res judicata* and collateral estoppel bar plaintiff from relitigating her claims for benefits under either the John Hancock or Canada Life policy.

**The Motion for Sanctions**[8]

Rule 11, Fed.R.Civ.P., provides in relevant part:

(b) Representations to the Court.  By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending,

---

[8] The court notes that Mr. Ford has been disbarred.  This does not affect the ability of this court to impose sanctions on him for actions taken prior to his disbarment.  *See In re Emanuel*, 422 B.R. 453 (Bankr. S.D.N.Y. 2010)..

modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

(c) Sanctions.

(1) In General.   If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.   Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

(2) Motion for Sanctions.   A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses,

including attorney's fees, incurred for the motion.

(3) On the Court's Initiative.  On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

(4) Nature of a Sanction.  A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.   The   sanction   may   include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

(5) Limitations on Monetary Sanctions.  The court must not impose a monetary sanction:

(A) against a represented party for violating Rule 11(b)(2); or
(B) on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.

(6) Requirements for an Order.  An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.

In filing a pleading in a federal court, an attorney certifies that he has conducted a reasonable inquiry and that the pleading is well-grounded in fact, legally tenable, and "is not presented for any improper purpose."  The objective standard for testing conduct under Rule 11, Fed.R.Civ.P., is "reasonableness under the circumstances" and "what was reasonable to believe at the time" the pleading was submitted.

The Eleventh Circuit requires a two-step inquiry as to (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous.  Rule 11 sanctions are warranted when a party files a pleading that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose.  *See Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).  *But see Riccard v. Prudential Ins. Co.*, 307 F.3d 1277 (11th Cir. 2002), which states:

> Rule 11 requires district courts to impose "appropriate sanctions," after notice and a reasonable opportunity to respond, where an attorney or party submits a pleading to the court that:  (1) is not well-grounded in fact, i.e., has no reasonable factual basis; (2) is not legally tenable; **or** (3) is submitted in bad faith for an improper purpose.  *See* Fed.R.Civ.P. 11(b).

*Id.* at 1294 (emphasis added).  *See also Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (same).

Title 28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The Eleventh Circuit has held that the plain language of the statute imposes three essential requirements:  (1) the attorney must engage in unreasonable and vexatious conduct; (2) that conduct must multiply the proceedings; and (3) the amount of the sanction must bear a "financial nexus to the excess proceedings."  *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997).  It also has stated that § 1927 must be "strictly construed" because it is "penal in nature."  *Id.* at 1395.  A court may impose § 1927 sanctions independent of a motion by a party, based on its inherent authority.  *See Hashemi v. Campaigner Publications, Inc.*, 784 F.2d 1581 (11th Cir. 1986); *Jones v. Continental Corp.*, 789 F.2d 1225 (6th Cir. 1986).

First, it is notable that plaintiff never filed a response to the motions for sanctions filed by defendants.  In this case, it is obvious from the prior history of litigation involving plaintiff and the pleadings in this case that sanctions are warranted against plaintiff and plaintiff's attorney, Robert H. Ford.  The complaint and proposed amended complaint submitted by Mr. Ford are not well-grounded in fact, nor are they legally tenable.  Further, the complaint is clearly submitted in bad

faith for an improper purpose–seeking payment of insurance benefits already obtained by plaintiff and to which she was not even entitled–and in derogation of final, valid and binding orders of the state courts.  Even when these shortcomings were clearly pointed out to counsel by the motions for summary judgment of defendants, Mr. Ford continued to pursue the claims and argue against summary judgment instead of dismissing the claims, as he should have.  Based on the legal and factual analysis in this opinion, the claims in this lawsuit are frivolous and it should be obvious to any attorney that they are frivolous.  The claims are without reasonable factual basis and are based on legal theories that have no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law.  Further, plaintiff herself was aware and testified on several occasions that she already had obtained the cash value of the policies on which she now is attempting to recover.

Analyzing the conduct of Mr. Ford under § 1927, the court finds that Mr. Ford has engaged in unreasonable and vexatious conduct in bringing this lawsuit and in continuing to pursue it.  His conduct has multiplied the proceedings regarding the John Hancock and Canada Life policies, causing John Hancock and Canada Life to have to defend against a frivolous lawsuit after having won in state court years ago. The amount of the sanction, which will be the attorneys fees, costs and expenses incurred by John Hancock and Canada Life in defending this lawsuit, will bear a "financial nexus to the excess proceedings."

### CONCLUSIONS

Based on the foregoing, the court finds and concludes that the Motion for Summary Judgment is due to be granted and this action dismissed with prejudice. The court further finds and concludes that the Motion for Sanctions is due to be granted. A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

The Clerk is DIRECTED to provide a copy of this Memorandum Opinion to all counsel of record and to mail a copy of this Memorandum Opinion to plaintiff, Polly McAnally, at 680 County Highway 38, Horton, AL 35980-7615, at 756 County Highway 38, Horton, AL 35980-7616, at 552 Williams Settlement Road, Blountsville, AL 35031-7203, and at 120 Medical Street, Apt. A3, Altoona, AL 35952-6469.

DONE this 24th day of September, 2010.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE